UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKY WHITEHEAD and OMAR WILLIAMS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| THOMAS J. DART, in his official capacity, BILQIS JACOBS-EL, in her official capacity, MARTIN MAHONEY, RONALD PECHOTA, MARK DOMICO, and COOK COUNTY MUNICIPALITY, | ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 14 C 1656

Chief Judge Rubén Castillo

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ricky Whitehead and Omar Williams ("Plaintiffs") bring their third amended complaint against Defendants Cook County Sheriff Thomas J. Dart ("Sheriff Dart"), Bilqis Jacobs-El ("Jacobs-El"), Martin Mahoney ("Mahoney"), Ronald Pechota ("Pechota"), Mark Domico ("Domico"), and Cook County Municipality (collectively "Defendants"). (R. 76, Third Am. Compl.) Plaintiffs have brought suit pursuant to 42 U.S.C. § 1983 ("Section 1983"), claiming that they have been forced to endure unconstitutional conditions of confinement and, specifically, extremely low temperatures in their jail cell over a period of months. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Dart and Jacobs-El seek to dismiss Plaintiffs' claims under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). (R. 84, Mot. at 1.) For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

Plaintiffs are pretrial detainees at the Cook County Jail (the "Jail") and were cellmates, housed in Division 9, during the winter months of 2013-2014. (R. 76, Third Am. Compl. ¶¶ 5-6,

18.) Plaintiffs claim that while housed in their cell they suffered from lack of heat and, despite filing several grievances and exhausting all administrative remedies, they received "no reprieve from the cruelly cold conditions." (*Id.* ¶ 18.)

Plaintiffs also allege that Defendants ignored established guidelines that address temperature regulation within the Jail. (*Id.* ¶¶ 13-16, 19-20.) Specifically, as part of an agreed order in *United States v. Cook County, Illinois*, 10-cv-02946 (N.D. Ill. May 13, 2010), the Cook County Department of Facilities Management ("Facilities Management") is obligated to:

> [E]nsure adequate ventilation throughout the Facility to ensure that inmates receive an adequate supply of air flow and reasonable levels of heating and cooling. [Facilities Management] staff shall review and assess compliance with this requirement on a daily basis for automated systems and on an annual basis for non-automated systems.

(R. 76, Third Am. Compl. ¶ 13 (citing Agreed Order at ¶ 83(e), *Cook Cty.*, 10-cv-02946 (N.D. Ill. May 13, 2010)).) Plaintiffs also allege that a January 2011 Cook County Interagency Directive provides that "Cook County employees shall respond immediately when notified of any abnormal temperature conditions requiring remedy in custodial areas" and that "unsafe temperatures . . . are the shared responsibility of the Sheriff's Office and Facilities Management." (R. 76, Third Am. Compl. ¶ 14.) As part of the same Interagency Directive, "the Sheriff's Office is required to take appropriate actions to address unsafe temperatures," including:

    a.    report abnormal temperatures (indoor temperatures below 68°) to Facilities Management;

    b.    upon verification of an abnormal temperature, ensure that an incident report and a work order are completed;

    c.    in instances where the indoor temperature falls below 60°, provide all inmates in affected areas blankets, and move such inmates to a warmer area within two hours; and

> d. if a temperature control issue cannot be remedied within 24 hours, further action, such as inmate relocation, must be taken.

(*Id.* ¶ 15 (internal quotation marks omitted).) Plaintiffs further allege that the maintenance officials at the Jail "are required to monitor the temperature in the cells three times per day, and confirm a temperature between 68 and 77 degrees Fahrenheit," and that "any deviation from this range must be quickly addressed and corrected." (*Id.* ¶ 16.)

Plaintiffs claim that during the relevant time period their cells were "so cold that [they] could see their breath in the air, their shampoo bottles froze, and ice and frost accumulated on the walls." (*Id.* ¶ 21.) Despite these cold conditions, Plaintiffs claim their complaints were virtually ignored. (*Id.* ¶ 22.) As a result of the extreme cold, Plaintiffs have suffered "frequent headaches; cold chills; aching bones and joints; extreme sleep deprivation; and various disease-like symptoms." (*Id.* ¶ 24.) In addition to their complaints being ignored, Plaintiffs allege that Defendants "created records in order to falsely contradict Plaintiffs' claims of freezing conditions in their cell." (*Id.* ¶ 23). To support this contention, Plaintiffs claim that throughout discovery, "Defendants have produced no records of abnormal temperatures in Plaintiffs' cell or cells in Division 9 during the relevant period, even though the Interagency Directive requires the Sheriff's Office and Facilities Management to create such records." (*Id.*)

Plaintiffs filed their original complaint *pro se* on March 7, 2014. (R. 1, Compl.) Following the appointment of counsel to represent Plaintiffs, (R. 7, Order), the parties engaged in an unsuccessful settlement conference before Magistrate Judge Jeffrey Cole, (R. 43, Min. Entry). The parties then proceeded with discovery and Plaintiffs filed two amended complaints. (R. 17, Am. Compl.; R. 64, Second Am. Compl.). In response to Sheriff Dart's motion to dismiss the second amended complaint, (R. 71, Mot. to Dismiss), Plaintiffs filed a third amended complaint, (R. 78, Third Am. Compl.). The third amended complaint names Cook County, Sheriff Dart in

3

his official capacity as Cook County Sheriff, Jacobs-El in her official capacity as Director of Facilities Management, and Mahoney, Pechota, and Domico—all employees of the Facilities Management—in their individual capacities. (*Id.* ¶¶ 7-12.) Pursuant to Section 1983, Plaintiffs bring claims against Defendants challenging the conditions of their confinement and alleging that they have been "deprived of rights owed to them by the Fourteenth Amendment to the Constitution." (*Id.* ¶¶ 4, 25.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a claim. FED. R. CIV. P. 12(b)(6). Under federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A claim for relief must also be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555. "In determining a complaint's sufficiency, [a court will] . . . construe it in light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmovant's] favor." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citation and internal quotation marks omitted). However, a court need not "accept as true any legal assertions or recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (citation and internal quotation marks omitted). Finally, in deciding a Rule 12(b)(6) motion, the Court can consider "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are

central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).[1]

## ANALYSIS

Sheriff Dart and Jacobs-El move to dismiss the Section 1983 claims against them, arguing that Plaintiffs have failed to properly allege a viable claim under *Monell*. (R. 84, Mot. 1.) Plaintiffs sue Sheriff Dart and Jacobs-El in their official capacities, which means the lawsuit is against the government agencies that employ them—the Sheriff's Department and Facilities Management. *See DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 974 n.1, 976 n.2 (7th Cir. 2000) ("An official capacity suit is the same as a suit against the entity of which the officer is an agent."); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity lawsuits generally represent . . . another way of pleading an action against an entity of which an officer is an agent."). Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In order for liability to attach under *Monell*, a plaintiff must allege that a local government *itself* caused or participated in the

---

[1] On March 10, 2016, Plaintiffs filed their supplemental response in opposition to Defendants' motion to dismiss. (R. 100, Suppl. Resp.) Plaintiffs' supplemental response includes facts in support of their claims that officials have a practice of creating records that falsely report that the temperatures inside the cells are consistently within the acceptable temperature range and, that regardless of inmate complaints, officials never record abnormally cold temperatures. (*Id.*) Plaintiffs also attached documents and deposition testimony to their supplemental response. (R. 100-1-100-12, Exs. A-L.) Defendants urge the Court to "disregard all extrinsic matters presented by Plaintiffs' " supplemental response and not to convert the instant motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56. (R. 101, Reply to Suppl. Resp. at 2 (citing FED. R. CIV. P. 12(d)).) The U.S. Court of Appeals for the Seventh Circuit has held that "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citation and internal quotation marks omitted). Because the supplemental response contains factual assertions in line with the third amended complaint, the Court will consider the additional allegations included in Plaintiffs' supplemental response. However, the Court will not consider the extrinsic documents and deposition testimony attached to the supplemental response. *See* FED. R. CIV. P. 12(d).

deprivation of his or her rights. *Id.* at 694. A plaintiff's *Monell* claim against a municipality is proper "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 727 (7th Cir. 2014) (quoting *Monell*, 436 U.S. at 694). "There are only three ways in which a municipality can be held liable under Section 1983." *League of Women Voters of Chi.*, 757 F.3d at 727. There must be:

> (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Id.* at 727. While there is no heightened pleading standard for *Monell* claims, *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007), legal conclusions and conclusory allegations are not enough to support a plausible claim. *Iqbal*, 556 U.S. at 679.

Plaintiffs here do not allege the existence of an express policy or that their harm was directly caused by a person with final policymaking authority. Thus, the only way Plaintiffs can assert a Section 1983 claim against Sheriff Dart and Jacobs-El is by alleging a widespread practice "so permanent and well-settled that it constitutes a custom or practice." *Sims*, 506 F.3d at 515. The Seventh Circuit has declined to "adopt any bright-line rules defining a 'widespread custom or practice,'" but to allege a widespread practice a plaintiff must state that the city policymakers were "deliberately indifferent as to [the] known or obvious consequences" of the alleged practice. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (alteration in original). In other words, the municipality or city official "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* In addition, a plaintiff pursuing a widespread practice claim generally must allege more than one, and sometimes more than three, instances of misconduct. *Id.* This

requirement is intended to "demonstrate that there is a policy at issue rather than a random event." *Id.* Finally, a plaintiff must also allege causation—specifically, that the custom was the "moving force" behind the constitutional violation. *Sims*, 506 F.3d at 514 (citation omitted).

When a pretrial detainee alleges unconstitutional conditions of confinement, the Seventh Circuit applies a "deliberate indifference" standard. *See Smith*, 803 F.3d at 309. First, the Court will consider the objective element of the claim—whether "the alleged conditions were objectively serious enough to amount to a constitutional deprivation." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *see also Smith*, 803 F.3d at 308. The Seventh Circuit has recently reiterated that there are "several situations that meet this demanding test, including lack of heat, clothing, or sanitation." *Gray v. Hardy*, --- F.3d ---, 2016 WL 3457647, at *2 (7th Cir. June 24, 2016); *see also Smith*, 803 F.3d at 309-10 ("An adverse condition amounts to a constitutional deprivation when it results in the denial of a basic human need, such as adequate food, clothing, shelter, and medical care." (citation and internal quotation marks omitted)). Next, the Court considers the subjective component of the claim—whether "the defendants possessed a sufficiently culpable state of mind." *Burton*, 805 F.3d at 784; *see also Smith*, 803 F.3d at 309. "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012).

## I. Defendant Dart

Defendants argue that the *Monell* claim against Sheriff Dart should be dismissed for two reasons. First, Defendants argue that because Facilities Management and not Sheriff Dart "is responsible for monitoring and adjusting the heating, cooling and ventilation system at the Cook County Jail," Plaintiffs' allegations cannot "demonstrate that Sheriff Dart's practices and

customs were the 'moving force' behind Plaintiffs' alleged injuries." (R. 84, Mot. at 5-9.) Second, Defendants argue that the *Monell* claim fails because there are no allegations to support an inference that Sheriff Dart or his employees were deliberately indifferent to Plaintiffs' needs. (*Id.* at 9-10.)

Contrary to Defendants' contention, Plaintiffs sufficiently allege that Sheriff Dart is jointly responsible for the heating and cooling at the Jail. Plaintiffs allege that Sheriff Dart was at all relevant times Cook County Sheriff and, thus, "responsible for maintaining the custody, safety, and well-being of the inmates at the Cook County Jail." (R. 76, Third Am. Compl. ¶ 7.) Plaintiffs also allege that both the Sheriff's Office and Facilities Management "have countless policies that govern and instruct the proper management of the various facilities, including the divisions of the Cook County Jail." (*Id.* ¶ 3.) Plaintiffs also claim that "the unsafe temperatures addressed in this action are the shared responsibilities of the Sheriff's Office and Facilities Management," and that "under this shared responsibility, the Sheriff's Office is required to take appropriate actions to address unsafe temperatures[.]" (*Id.* ¶¶ 14, 15.) Specifically, when there are cold conditions within the Jail, Plaintiffs allege that the Sheriff's Office is required to report abnormal temperatures, complete incident reports, provide blankets to inmates who are cold, and/or move these inmates to warmer cells. (*Id.* ¶ 15.) These allegations sufficiently allege that Sheriff Dart is responsible—at least in part—for the heating and cooling of the Jail.[2]

---

[2] Plaintiffs' allegations also find support in Illinois law, which states that the Sheriff—as the warden of the Jail—is responsible for the maintenance of the Jail. *See* 730 ILL. COMP. STAT. 125/2 ("The Sheriff of each county in this State shall be the warden of the jail of the county[.]"); 730 ILL. COMP. STAT. 125/18 ("The Warden shall keep and maintain the jail in a clean and healthful condition."); 730 ILL. COMP. STAT. 125/3 ("The Sheriff shall also be responsible for the hiring and training of all personnel necessary to operate and maintain the jail."); 55 ILL. COMP. STAT. 5/3-6017 (The sheriff "shall have the custody and care of the . . . jail of his or her county[.]"); *see also DeGenova*, 209 F.3d at 976 ("Illinois sheriffs have final policymaking authority over jail operations.").

Sheriff Dart argues that the third amended complaint concedes that the control of the heating and cooling at the Jail is the responsibility of Facilities Management because Plaintiffs rely on an Agreed Order from another lawsuit that states that Facilities Management is obligated to "[e]nsure adequate ventilation throughout the [Cook County Jail] to ensure that inmates receive . . . reasonable levels of heating and cooling." (R. 84, Mot. at 7 (quoting R. 76, Third Am. Compl. ¶ 13).) However, Sheriff Dart entirely ignores the other allegations (as discussed above) that specifically state that the Sheriff's Department and the Facilities Management share the responsibility to address unsafe temperatures at the Jail.[3] The Court must accept these allegations as true at this stage. Ultimately, the third amended complaint sufficiently alleges that Sheriff Dart and the Sheriff's Office are partly responsible for the temperature within the Jail.

Plaintiffs also make a series of allegations that plausibly suggest that Sheriff Dart and his office's customs and practices are the "moving force" behind Plaintiffs' injuries. Plaintiffs claim that the Sheriff's Office has a practice of frequently ignoring or not documenting abnormal temperatures within the Jail. (R. 76, Third Am. Compl. ¶ 20.) To support this allegation, Plaintiffs also state that there is "an institutional practice of delay in responding to complaints of abnormally cold cells" because, after a report of an abnormal temperature, it often takes "several days from the date of the inmates' grievance until the time when the Sheriff's Office refers the

---

[3] Sheriff Dart also argues that it is clear that Facilities Management is solely responsible for the temperature control at the Jail because "Plaintiffs have received discovery from [Facilities Management], and . . . their discovery efforts have revealed the existence of temperature logs generated by [Facilities Management]." (R. 84, Mot. at 7.) At the motion to dismiss stage, the Court must confine its analysis to the allegations made within the four corners of the complaint, any documents central to the complaint, and any allegations made within the plaintiffs' response to the motion to dismiss that are consistent with the complaint. *See Wilson v. Price*, 624 F.3d 389, 391 n.1 (7th Cir. 2010) ("[W]e only consider those allegations made within the four corners of the complaint."). Sheriff Dart's request for this Court to consider the source and content of the discovery produced when ruling on this motion must be disregarded. *See, e.g., Sumling v. Vill. of East Dundee*, No. 14 C 3794, 2015 WL 5545294, at *5 (N.D. Ill. Sept. 18, 2015) ("[D]efendants' argument does not find a basis in any allegations in the complaint. The argument therefore involves issues that cannot appropriately be addressed on a motion to dismiss for failure to state a claim.").

cold complaint to Facilities Management." (R. 100, Suppl. Resp. at 8-9 (internal quotation marks omitted).) Plaintiffs also allege that despite established guidelines requiring the documentation of abnormal temperature findings, the Sheriff's Office and Facilities Management have a practice of purposely not recording abnormal temperatures as evidenced by the fact that there are "no records of abnormal temperatures in Plaintiffs' cells or cells in Division 9 during the relevant time period." (R. 76, Third Am. Compl. ¶ 23; *see also* R. 100, Suppl. Resp. at 7-8.) Plaintiffs further allege that Defendants "created records in order to falsely contradict Plaintiffs' claims of freezing conditions in their cell." (R. 76, Third Am. Compl. ¶ 23; *see also* R. 100, Suppl. Resp. at 9-11.) In addition, Plaintiffs claim that maintenance employees are required to "mak[e] temperature rounds on each shift," but at least one defendant admits to never recording the temperatures in the individual cells. (R. 100, Suppl. Resp. at 2.) Simply put, the allegations in the third amended complaint plausibly suggest that Sheriff Dart and the Sheriff's Office have a practice of not promptly or adequately responding to reports of abnormal temperatures, not documenting instances of abnormal temperatures, and incorrectly reporting that jail temperatures are within the normal range when they are not. Plaintiffs have also alleged that these practices have caused them to endure freezing conditions over a period of months. (R. 76, Third Am. Compl. ¶¶ 24-25.) Thus, Plaintiffs have sufficiently alleged enough factual content to raise a plausible claim that these practices were the motivating force behind the alleged constitutional violations. *See, e.g., Hildreth v. Cook Cty.*, No. 08 C 3506, 2010 WL 1656810, at *5 (N.D. Ill. Apr. 23, 2010) (determining that the plaintiff's allegations were sufficient because they gave "defendants fair notice of the claim and its basis" and concluding that if the plaintiff "demonstrates that, because of a policy of the sheriff's office, he was denied access to his

medication and deprived of the ability to prepare written requests and written grievances about the conditions of his confinement, he may be entitled to relief under § 1983").

In addition, contrary to Defendants' arguments that Plaintiffs' claim is lacking in factual content, Plaintiffs' allegations satisfy both the objective and subjective components of a claim challenging an inmate's conditions of confinement. The first prong does not seem to be contested and any argument to the contrary would go nowhere. With regards to the objective prong, "[i]ncarcerated persons are entitled to confinement under humane conditions which provide for their basic human needs." *Rice*, 675 F.3d at 664 (citation and internal quotation marks omitted). Basic human needs include shelter and heat. *See Gray*, 2016 WL 3457647, at *2; *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006; *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) ("[J]ails must meet minimal standards of habitability. This includes adequate bedding and protection from cold[.]"). Notably, the Seventh Circuit has stated that "the fact-intensive inquiry into the inadequate heating, the severity of the resulting cold, and the duration of the inmate's exposure to it generally requires the development of a factual record." *Budd*, 711 F.3d at 843 (concluding that pretrial detainee stated plausible claim that he was subjected to unconstitutional conditions of confinement); *see also Lara v. Sheahan*, No. 06 C 669, 2007 WL 1030304, at *4 (N.D. Ill. Mar. 30, 2007) ("Whether conditions [relating to exposure to second-hand smoke and cold] constitute the denial of 'basic human needs' . . . is a matter to be determined on a more developed record." (citation and internal quotation marks omitted)). Plaintiffs allege that they have been subjected to frigid temperatures over a span of months. (R. 76, Third Am. Compl. ¶ 18.) Thus, at this stage in the litigation, Plaintiffs' allegations sufficiently describe a serious condition that deprives them of "basic human needs." *Rice*, 675 F.3d at 664.

In regards to the subjective prong, "[a]n official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Id.* at 665. The Seventh Circuit has stated that "the personal involvement of senior jail officials, such as Sheriff Dart, can be inferred at the motion to dismiss stage, where . . . the plaintiff alleges 'potential systemic,' as opposed to 'clearly localized,' constitutional violations." *Smith*, 803 F.3d at 309 n.2. Plaintiffs allege that not only were they subjected to extreme cold, but other inmates were also subjected to extreme cold. Plaintiffs also allege that they filed numerous grievances about their cell temperatures, (R. 76, Third Am. Compl. ¶ 18), and that there were "over 40 cold-related, Division 9 grievances" during these winter months, (R. 86, Resp. at 5). However, Plaintiffs claim that these complaints were virtually ignored. (R. 76, Third Am. Compl. ¶ 18, 22.) Their allegations of deliberate indifference are further bolstered by their claims that the Jail officials routinely falsely reported that the temperatures within the cells were within an acceptable range. (*Id.* ¶¶ 23, 26.) When considering the complaint as a whole, Plaintiffs have adequately alleged a systemic pattern of exposing inmates to prolonged periods of extreme cold and of officials insufficiently responding to these grievances. *See, e.g., Delk v. Watson*, No. 15-cv-01256-NJR, 2015 WL 8479264, at *3 (S.D. Ill. Dec. 10, 2015) (permitting claim for unconstitutional conditions of confinement to proceed and concluding that the sheriff and other jail officials "possessed a sufficiently culpable state of mind" because the allegations indicated that "the conditions persisted for at least thirty days, involved thirty inmates, and, by all indications, were systemic"). As such, the subjective component of a claim challenging Plaintiffs' conditions of confinement is satisfied.

Defendants also argue that the third amended complaint is lacking in factual content because Plaintiffs "do not allege that they requested to be moved to a different cell" or that "they

were forced to remain in their cell because there were no empty cells available." (R. 84, Mot. at 10.) Aside from providing no legal authority to support the assertion that Plaintiffs were required to include this information in their complaint, this argument ignores the allegations that plausibly suggest that Plaintiffs did in fact request to be moved to a different cell. Plaintiffs allege that they "received no reprieve from the cruelly cold conditions in their cells," that they were only provided one additional blanket, and that they were never "moved out of their cell." (R. 76, Third. Am. Compl. ¶¶ 18, 22.)[4] Clearly, as jail detainees it can be inferred that Plaintiffs did not have the freedom to simply move about the jail as they wished. The law does not require a heightened pleading standard for *Monell* claims, *Sims*, 506 F.3d at 514, and these allegations provide sufficient factual content to overcome the motion to dismiss. Plaintiffs have plausibly alleged that Sheriff Dart and the Sheriff's Office maintained a widespread practice of ignoring and failing to document abnormal temperatures and failing to take the proper steps to rectify the extreme cold within the jail cells in Division 9. Thus, Plaintiffs' *Monell* claim against Sheriff Dart may proceed.

## II. Defendant Jacobs-El

Defendants next argue that Jacobs-El—who is the Director of Facilities Management—should be dismissed from the lawsuit because the third amended complaint seeks to "impose Section 1983 liability upon [her] . . . based upon a *respondeat superior* theory of liability." (R. 84, Mot. at 10.) Or, alternatively, if Plaintiffs are asserting a *Monell* claim, it should be dismissed

---

[4] Defendants also argue that Plaintiffs' allegations fail because they are internally inconsistent. (R. 84, Mot. at 9-10.) For example, Defendants argue that while Plaintiffs claim that their complaints "essentially went unheeded," they admit that they were provided "with additional blankets." (*Id.* at 9.) These allegations are not contradictory but consistent with one another. The thrust of Plaintiffs' complaint is that despite repeated complaints of frigid temperatures, Plaintiffs' grievances were either completely ignored or inadequately attended to. Depending on the temperature and specific conditions within the cell—such as when it is so cold that shampoo has frozen or there is frost on the walls—providing a blanket to an inmate may provide little to no relief. Thus, any argument that Plaintiffs' allegations are impermissibly contradictory is unavailing.

because "Plaintiffs fail to allege any facts that would support a direct, causal nexus between the various policies . . . and their alleged constitutional deprivations as required by *Iqbal* and *Twombly*." (*Id.* at 11.) As a preliminary matter, Defendants are correct that Jacobs-El cannot be held liable for constitutional claims based on the doctrine of *respondeat superior*. *See Monell*, 436 U.S. at 691. However, Plaintiffs do not claim to be pursuing a theory of liability based on *respondeat superior*, but instead argue that they have sufficiently stated a *Monell* claim against Jacobs-El and their arguments regarding Sheriff Dart "applies with equal force to Defendant Jacobs-El[.]" (R. 86, Resp. at 7-8.). Similar to the Court's conclusion regarding Sheriff Dart, Plaintiffs have stated a *Monell* claim against Jacobs-El.

The Court has already concluded that Plaintiffs have alleged that it is the joint responsibility of the Sheriff's Office and Facilities Management to maintain the heating and cooling within the Jail. Plaintiffs have alleged that there was a widespread practice by both Facilities Management and the Sheriff's Office of not adequately responding to complaints of cold temperatures and inaccurately recording the temperatures inside the cells. (R. 76, Third Am. Compl. ¶¶ 3, 16, 17, 19, 20, 23.) Plaintiffs have also alleged that these policies were the moving force behind Plaintiffs' deprivation. (*Id.* ¶¶ 3, 17, 18, 20, 22, 24.) In addition, Plaintiffs claim to have suffered a deprivation that is objectively and sufficiently serious; they have endured extremely low temperatures over a span of months. *See, e.g., Rice*, 675 F.3d at 664; *Sheahan*, 2007 WL 1030304, at *4. And, like Sheriff Dart, Jacobs-El's personal involvement may be inferred at the motion to dismiss stage because Plaintiffs have alleged a systemic pattern— perpetuated by both the Sheriff's Office and Facilities Management—of exposing inmates to extreme temperatures. *See Smith*, 803 F.3d at 309 n.2; *Delk*, 2015 WL 8479264, at *3. Ultimately, Plaintiffs have pled facts to sufficiently allege that Jacobs-El and Facilities

Management maintained a widespread practice of failing to adequately respond to complaints of low temperatures within the cells and were deliberately indifferent to these serious conditions. Thus, Plaintiffs' *Monell* claim against Jacobs-El may proceed.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' motion to dismiss (R. 84.). The parties shall appear for a status hearing on August 31, 2016, at 9:45 a.m. and shall be prepared to set firm deadlines in this long-pending lawsuit. The parties are also DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 1, 2016**